# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 12, 2020 Session

## ST. PAUL COMMUNITY LIMITED PARTNERSHIP, ET AL. V. ST. PAUL COMMUNITY CHURCH

**Appeal from the Chancery Court for Davidson County**
**No. 15-0918-I          Patricia Head Moskal, Chancellor**

_____

### No. M2020-00272-COA-R3-CV

_____

This appeal concerns the trial court's denial of attorney's fees upon remand from this court. The defendant church requested attorney's fees, to which the plaintiff lessee asserted that such fees were not warranted given the nature of the action. The trial court denied the request for fees, holding that an award of attorney's fees was conditioned upon the need to hire counsel for the enforcement of the lease agreement and that the action at issue was one for declaratory judgment. We reverse and hold that attorney's fees are warranted pursuant to the terms of the lease agreement. We remand for proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, J., joined.

M. Taylor Harris, Nashville, Tennessee, for the appellant, Green Hills Community Church f/k/a St. Paul Community Church.

W. Scott Simms, D. Gil Schuette, and William L. Harbison, Nashville, Tennessee, for the appellees, St. Paul Community Limited Partnership, John T. Rochford, III, and Rochford Realty and Construction Co.

## OPINION

### I.    BACKGROUND

This appeal concerns property owned by Green Hills Community Church f/k/a St. Paul Community Church ("the Church").  In October 1987, the church leased the property at issue to Rochford Realty for a term of 101 years for the purpose of constructing and operating a retirement center.  A retirement center was later constructed as anticipated.  The facility is still operational to this day on the leased premises.  In 1988, Rochford Realty assigned the lease to John T. Rochford, III, who then assigned the lease to St. Paul Community Limited Partnership ("Lessee"), of which Mr. Rochford is the general partner.

As pertinent to this appeal, the lease provided that Lessee "shall be allowed to mortgage its interest in the Leased Premises and to transfer, assign and convey its leasehold estate for such mortgage purposes."  The lease also specifically acknowledged Lessee's right to procure mortgage insurance through the United States Department of Housing and Urban Development ("HUD") in connection with its financing of the improvements.  The lease provided, in pertinent part, as follows:

> [The Church] agrees that Lessee, in connection with its financing of the Improvements, may enter into and execute a Regulatory Agreement for Multifamily Housing Projects, HUD-92466 (10-85), made applicable to mortgages insured under Section 221(d)(4) of the National Housing Act, as amended, and [the Church] agrees that the requirements and provisions of said Regulatory Agreement shall be paramount and controlling as to the rights and obligations set forth in the Regulatory Agreement and shall supersede any requirements or provisions of this Lease in conflict therewith.  Attached hereto as Exhibit "C" and expressly made a part of this Lease is a Lease Addendum incorporating the provisions of FHA Form No. 2070.

Lessee sought HUD financing as agreed and then later fulfilled its loan obligations with HUD before obtaining a new mortgage with a conventional bank.  The change in financing was documented by a lease addendum, entered in 1998, which provided, in pertinent part, as follows:

> [Lessee] is authorized to obtain a loan, the repayment of which is to be secured by a deed of trust on Lessee's leasehold interest in the Leased Premises.  Lessee is further authorized to execute a deed of trust on Lessee's leasehold interest in the Leased Premises.

In 2013, Lessee again sought financing through HUD to repair and renovate the Community Center. At that time, FHA Form No. 2070 had been replaced with HUD Form 92070M, which allowed HUD to purchase the property, not just Lessee's leasehold interest, in the event of default. New HUD regulations also required a reduction in rent owed to the Church to secure financing. The Church did not agree to these conditions[1] and advised Lessee that it was not authorized to secure said financing pursuant to the terms of the lease. Lessee then advised the Church of its intent to file a declaratory judgment action.

In lieu of court involvement, the Church put the matter to a vote and ultimately approved the request by letter, which provided as follows:

> This letter will serve as confirmation of the vote taken by the St. Paul Community Church members this day, Sunday June 23, 2013, where there was an overwhelming majority approval by St. Paul Community Church affirming the rights approved in the 1988 lease with the St. Paul Senior Living Community and all amendments signed by the church in the following years, and also to include HUD financing and HUD-2070 as amended with HUD-92070M which would control if there is any conflict with the lease.

However, Lessee did not pursue the requested financing. Instead, the parties entered into negotiations to purchase the property upon which the Center was built. The negotiations later stalled, prompting Lessee to pursue the financing option once again. The Church, again, disputed Lessee's right to pursue the financing.

In 2015, Lessee filed this action, requesting a judgment establishing either its right to pursue the financing through the terms of the lease or recognition of a settlement agreement between the parties to allow the financing as evidenced by the 2013 letter. Lessee later amended its complaint, adding causes of action for (1) breach of settlement agreement as evidenced by the approval letter and (2) breach of contract. In support of its claim for breach of contract, Lessee asserted as follows:

> By refusing to agree that [Lessee] is entitled to obtain HUD financing under the terms of the Lease, [the Church] has anticipatorily repudiated its obligations under the Lease and has materially breached the lease.

---

[1] Lessee claims that FHA Form 2070 contained an identical purchase right for HUD, to which the Church responded that it never agreed to that portion of FHA Form 2070 when the lease was executed in 1988 and that the purchase option provision was intentionally omitted from Exhibit C to the Lease.

Further, the Lease provides that it may be amended by an "instrument in writing signed by the party or parties to be charged."

The [approval letter] constitutes a valid and enforceable amendment of the Lease. It was signed with authorization by [the Church] or with apparent authority by elder Jack Cope.

Prior to and in the course of this lawsuit, [the Church] has made it clear that it does not intend to honor the terms of the [approval letter]. As a result, [the Church] has further materially breached the Lease by anticipatorily repudiating its obligations thereunder as amended by the [approval letter].

[Lessee] has been harmed as a direct and proximate result of [the Church's] breaches of the Lease.

[Lessee] is entitled to specific performance of the Lease with respect to HUD financing because a damage remedy would not be adequate under the circumstances.

The Church filed a counter-complaint, asking the court to enforce the lease as written, claiming that the terms of the lease did not require the Church to continually amend the lease in keeping with HUD's current underwriting requirements for Lessee's benefit and to its detriment. The Church claimed that the HUD provision in the lease was null and void as evidenced by the 1998 addendum. The Church asserted that Lessee's continued assertions to the contrary breached both the express terms of the lease and Lessee's duty of good faith and fair dealing. The Church also sought attorney's fees, costs, and expenses. Lessee asserted that the lease agreement contemplated the need for long-term financing and that the parties agreed that HUD financing should be permitted throughout the term of the lease.

The case proceeded to a hearing on cross-motions for summary judgment. The trial court granted partial summary judgment in favor of the Church by order, dated October 25, 2016, finding that the lease did not require compliance with new HUD regulations once the original HUD financing obligation was fulfilled. The court explained,

[O]ngoing HUD insured mortgages were not contemplated by the parties. It would not be reasonable for the parties to in advance decide to accept HUD regulations. And it would not be reasonable for [the Church] to predict or accept a HUD regulation that would reduce its rent by a substantial or material amount.

- 4 -

That was not contemplated by the parties. It would not be reasonable to inflict those regulations on [the Church] when [the Church] is not a party to the mortgage terms, to the current mortgage terms.

The court reserved ruling upon the issue of whether the parties reached a settlement agreement as evidenced by the 2013 approval letter. The court later granted summary judgment in favor of the Church on the settlement issue by order, dated May 19, 2017, and certified the judgment as final for purposes of appeal.

A panel of this court upheld the trial court's ruling. *See St. Paul Cmty. Ltd. P'ship v. St. Paul Cmty. Church*, No. M2017-01245-COA-R3-CV, 2018 WL 5733288, at *5 (Tenn. Ct. App. Oct. 31, 2018) (holding that the approval letter did not form a binding contract). Upon remand, Chancellor Bonnyman, the chancellor assigned to this case, retired. Chancellor Moskal then became the presiding judge assigned to this case.

Meanwhile, the Church moved for a grant of summary judgment on its remaining counter-complaint, requesting a declaration establishing that the Church was permitted to terminate the lease based upon Lessee's failure to comply with the lease agreement. The Church also sought attorney's fees pursuant to Paragraph 21 of the lease, which provides as follows:

ATTORNEY'S FEES AND INTEREST. In the event that it becomes necessary for Lessor to employ an attorney *to enforce collection of the rents* herein agreed to be paid, or *to enforce compliance with any of the covenants and agreements herein contained*, Lessee shall be liable for all reasonable attorney's fees costs and expenses so incurred by Lessor; and in addition, Lessee shall be liable for interest at ten per cent (10%) per annum on any sum which a court of competent jurisdiction shall finally determine to be due from lessee by reason of a breach of this Lease, such interest to run from the date of the breach.

(Emphasis added.). Prior to the court's ruling, the Church voluntarily dismissed its counter-complaint, with the exception of its request for attorney's fees.

The trial court denied the Church's motion, finding that the Church had not sought to "enforce compliance with any covenants and agreements" of the lease but that the Church had merely prevailed on Lessee's declaratory judgment claims, which were not enforcement actions. The court also rejected an alternative argument that fees should be awarded, even if the Church's request did not fall within the scope of the lease, because Lessee's claims were unreasonable. This timely appeal followed.

## II.    ISSUES

This case presents the following dispositive issues on appeal:

A.    Whether the trial court erred in denying the Church's request for attorney's fees upon remand pursuant to terms of the lease agreement.

B.    Whether the Church is entitled to attorney's fees on appeal.


## III.    STANDARD OF REVIEW

The language of a fee provision in a contract is subject to the usual rules of contract interpretation, and the award of such fees is limited to the situation agreed to by the parties. *Segneri v. Miller*, No. M2003-01014-COA-R3-CV, 2004 WL 2357996, at *6 (Tenn. Ct. App. Oct. 19, 2004). Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998). We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 684, 692 (Tenn. 2013) (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).


## IV.    ANALYSIS

### A. & B.

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). Paragraph 21 of the lease agreement provides for an award of attorney's fees in the event that the Church must employ an attorney "to *enforce compliance with any of the covenants and agreements*" in the lease agreement. Lessee argues that dismissal of the fee application was warranted when the action is most properly characterized as a declaratory judgment action to determine whether the lease conferred any right upon Lessee to utilize HUD financing over the Church's objection. The Church claims that the denial of its fee application was error, asserting that the action was not simply a declaratory judgment action. The Church further requests attorney's fees on appeal.

In denying the fee application, the trial court relied upon an unpublished opinion in which a panel of this court upheld the denial of attorney's fees in a suit seeking the declaration of rights under a restrictive covenant. *New Covenant Baptist Church v. Sark*, No. E2002-02693-COA-R3-CV, 2003 WL 21544248, at *1 (Tenn. Ct. App. Jul. 8, 2003).

In *New Covenant*, the plaintiff church purchased a lot that it planned to use as an ingress egress point to an adjacent tract. *Id.* The plaintiff filed an action in which it sought a declaration that the lot's restrictive covenants did not preclude the use of the lot in such a manner. *Id.* The trial court ruled that the planned use was not in violation of the restrictive covenants. *Id.* A panel of this court reversed, holding that the lot could not be used in such a manner. *Id.* The defendant property owners sought an award of attorney's fees pursuant to the following provision in the restrictive covenants:

> In any proceedings at law or equity to enforce these restrictions or for violation thereof, the losing party shall pay the attorney's fees of the prevailing party in such amount as may be fixed by the court in such proceedings.

*Id.* The trial court denied the requested fees, and a panel of this court affirmed on different grounds, holding that a suit seeking a declaration of rights under a restrictive covenant was not a suit to "enforce" those restrictions as required by the attorney fee provision. *Id.* Judge Susano authored a dissenting opinion in which he claimed that a fee award was warranted based upon the fact that the defendant property owners hired counsel and filed a counter-complaint to enforce said restrictions even though the plaintiff church had not yet violated the same. *Id.*, at \*2-4 (Susano, dissenting).

Our review of the record in this case reflects that while Lessee may have originally filed a declaratory judgment action, the complaint was later amended to include claims of (1) breach of settlement agreement and (2) breach of the lease agreement. As pertinent to this appeal, Lessee argued that the requested financing was anticipated in the lease agreement and that the Church's refusal to acquiesce was an anticipatory repudiation of its obligations and a breach of the lease. The Church argued that the HUD financing clause was null and void as evidenced by the 1998 addendum to the lease agreement. The Church claimed that the lease did not require continued acquiescence to HUD financing and current underwriting requirements for Lessee's benefit and to its detriment. In sum, Lessee sought to enforce compliance with the 1988 lease, while the Church sought to enforce compliance with the 1998 addendum to the lease.

In consideration of the foregoing, we hold that attorney's fees are warranted pursuant to the terms of the lease agreement. Exercising our discretion in such matters, we affirm the request for attorney's fees on appeal and remand for a determination of the reasonable amount of such fees at the trial court level and now on appeal.

## V.     CONCLUSION

We reverse the judgment of the trial court.  The case is remanded for further proceedings consistent with this opinion.  Costs of the appeal are taxed to appellees, St. Paul Community Limited Partnership, John T. Rochford, III, and Rochford Realty and Construction Co.

_____
JOHN W. MCCLARTY, JUDGE