# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 18, 2022 Session

## LAURA COWAN COFFEY v. DAVID L. COFFEY

**Appeal from the Chancery Court for Knox County**
**No. 189999-2      Robert E. Lee Davies, Senior Judge**

FILED

APR 11 2022

Clerk of the Appellate Courts
Rec'd by _Ropoyal_

### No. E2021-00433-COA-R3-CV

This appeal involves the calculation of post-judgment interest applying Tenn. Code Ann. § 47-14-121. The trial court calculated post-judgment interest utilizing the statutory interest rate that was applicable when the judgment was entered without modifying the interest rate when the statutory rate subsequently changed. Discerning no error, we affirm. We also deny the plaintiff's request for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Melissa B. Carrasco, Jonathan D. Reed, and Allison S. Jackson, Knoxville, Tennessee, for the appellant, David L. Coffey.

Christopher T. Cain and Thomas S. Scott, Jr., Knoxville, Tennessee, and David T. Black, Maryville, Tennessee, for the appellee, Laura Cowan Coffey.

# OPINION

## Background

The underlying action follows the death of Steven Coffey ("the deceased"), who was the owner of a successful securities business, Securities Service Network, Inc. ("SSN"), and its wholly-owned subsidiary, Renaissance Capital, Inc. *See Coffey v. Coffey* ("*Coffey I*"), 578 S.W.3d 10, 14 (Tenn. Ct. App. 2018); *Coffey v. Coffey* ("*Coffey II*"), No. E2020-00157-COA-R3-CV, 2020 WL 6277433, at *1 (Tenn. Ct. App. Oct. 26, 2020), *perm. app. denied* (Tenn. Apr. 7, 2021). The deceased died in an airplane crash in July 1995. *Id.* Following the deceased's death, his written will named the deceased's father, David L. Coffey ("Defendant"), as executor of the deceased's estate. *Coffey II*, at *1. In September 1996, all of the stock for the two companies were sold by the estate to Defendant for $1,613,200, and the court entered an order approving the sale. *Id.* at *4; *Coffey I*, at 17. At the time of the sale, all of SSN's profits remained in the company and had not been distributed to the beneficiary of the deceased's estate. *Coffey II*, at *5. The court subsequently entered an order closing the estate without a detailed accounting, pursuant to the deceased's will. *Id.* at *4; *Coffey I*, at 17.

In July 2015, the deceased's widow, Laura Cowan Coffey ("Plaintiff"), filed an action against Defendant, the executor of the deceased's estate.[1] *Coffey I*, at 14. In this action, Plaintiff alleged fraud, breach of fiduciary duty, conversion, and unjust enrichment. *Coffey II*, at *1. In her complaint, Plaintiff alleged that Defendant had "breached his fiduciary duties and engaged in a fraudulent scheme to obtain for himself two highly-profitable assets of the estate, which ultimately sold for $45,000,000 in 2015 for the benefit of [Defendant's] heirs." *Coffey I*, at 14.

Following a summary judgment motion by Defendant, the Trial Court granted the motion and dismissed all of Plaintiff's claims, upon its finding that the action violated the statute of limitations. *Coffey I*, at 14. Following an appeal to this Court, the Trial Court's judgment was reversed as to all claims except unjust enrichment and extrinsic fraud under Tennessee Rule of Civil Procedure 60.02, and this Court held that Plaintiff had "set forth specific facts showing that there are genuine issues of material fact pertaining to fraudulent concealment of plaintiff's cause of action against the defendants rendering summary judgment inappropriate."[2] *Id.* at 14. This Court, therefore, remanded the remaining claims to the Trial Court for further proceedings. *Id.* at 26.

---

[1] The action also was filed against Defendant's son, in his capacity as trustee of the trust benefiting from the proceeds of the sale of assets, but he was dismissed as a defendant prior to trial. *Coffey I*, at 14.

[2] This Court upheld the grant of summary judgment to Defendant as to the claims of unjust enrichment and extrinsic fraud under Tennessee Rule of Civil Procedure 60.02 on other grounds. *Coffey I*, at 25-26. These claims are not at issue in this appeal.

Following remand, the Trial Court conducted a bench trial in September 2019. *Coffey II*, at *1. Upon the conclusion of trial, the Trial Court found that (1) the statute of limitations had been tolled due to the fraudulent concealment of the claims by Defendant; (2) Plaintiff had failed to meet her burden of proof to establish that Defendant had improperly influenced the appraisal of the deceased's company prior to its purchase; and (3) Defendant had "breached his fiduciary duty and converted $522,000 of excess cash by failing to cause SSN to distribute that amount to the estate before purchasing SSN." *Coffey II*, at *8. As a result, the Trial Court awarded to Plaintiff $522,000 in damages, plus pre-judgment interest at 10% per annum. *Id.* The Trial Court's judgment awarding damages to Plaintiff was entered on January 13, 2020. *Id.* Defendant appealed to this Court, which affirmed the Trial Court in *Coffey II* in its October 2020 opinion. *Id.* at 16. Following the Opinion issued by this Court, Defendant filed an application for permission to appeal to the Tennessee Supreme Court, pursuant to Tennessee Rule of Appellate Procedure 11. The application for permission to appeal was denied.

While the appeal in *Coffey II* was pending, Defendant filed an unopposed motion to stay the judgment pending appeal. The parties entered into an agreed order in March 2020, which provided that Defendant would deposit with the Trial Court a cash bond in the amount of $2,100,000.

The Tennessee Supreme Court issued a mandate on April 7, 2021, upon its denial of Defendant's Rule 11 application. Following *Coffey II*, the issue before the Trial Court was the calculation of post-judgment interest. After this Court's opinion, Plaintiff requested from the Trial Court clerk the distribution of $1,800,000. The clerk and master of the Trial Court subsequently filed a "Motion for Instructions" in April 2021, seeking entry of a court order "directing the disbursement of the cash bond to the Plaintiff and her attorney, or to the Defendant, if appropriate . . . ." Defendant filed a response to the motion, stating that the only remaining issue to be determined by the Trial Court is post-judgment interest.[3]

The Trial Court subsequently conducted a hearing on April 23, 2021 concerning the issue of post-judgment interest. Following this hearing, the Trial Court entered an order on April 26, 2021, identifying the applicable post-judgment interest rate to be 6.75% for the entirety of the period after the judgment was entered and held that the interest rate would not change even if the statutory interest rate applicable to post-judgment interest subsequently changed. Applying that interest rate, the Trial Court found that the total amount of the judgment in Plaintiff's favor totaled $1,923,659.46. Following the Trial Court's order regarding post-judgment interest, Defendant timely appealed to this Court. Although it does not appear that any evidence was introduced at the Trial Court's April 2021 hearing, Defendant filed a statement of evidence for purposes of appeal.

---

[3] Defendant's response mentions a response filed by Plaintiff; however, that response is not included in the record on appeal.

## Discussion

Although not stated exactly as such, Defendant raises the following issue for our review on appeal: Whether the Trial Court erred in awarding Plaintiff post-judgment interest at a fixed rate of 6.75% rather than modifying the interest rate for the time period that the posted statutory rate changed. Plaintiff raises an additional issue for our review, which we also restate slightly: Whether Defendant's appeal is frivolous such that Plaintiff should be awarded her attorney's fees and costs on appeal, pursuant to Tennessee Code Annotated § 27-1-122.

This appeal involves an issue concerning statutory construction. As our Supreme Court has instructed:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness. *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016). The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016). We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation. *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013). We do not alter or amend statutes or substitute our policy judgment for that of the Legislature. *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018).

The statute at issue that we must interpret is Tennessee Code Annotated § 47-14-121 (2013), which provides as follows in pertinent part:

> (a) Except as set forth in subsection (c), the interest rate on judgments per annum in all courts, including decrees, shall:
>
> > (1) For any judgment entered between July 1 and December 31, be equal to two percent (2%) less than the formula rate per annum

published by the commissioner of financial institutions, as required by § 47-14-105, for June of the same year; or

(2) For any judgment entered between January 1 and June 30, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for December of the prior year.

(b) To assist parties and the courts in determining and applying the interest rate on judgments set forth in subsection (a) for the six-month period in which a judgment is entered, before or at the beginning of each six-month period the administrative office of the courts:

(1) Shall calculate the interest rate on judgments that applies for the new six-month period pursuant to subsection (a);

(2) Shall publish that rate on the administrative office of the courts' web site; and

(3) Shall maintain and publish on that web site the judgment interest rates for each prior six-month period going back to the rate in effect for the six-month period beginning July 1, 2012.

Additionally, Tennessee Code Annotated § 47-14-122 provides that "[i]nterest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial."

In compliance with Tennessee Code Annotated § 47-14-121(b), the Tennessee Administrative Office of the Courts calculated and published to its website the applicable interest rate for each time period. The interest rate posted to the website of the Tennessee Administrative Office of the Courts beginning on January 1, 2020 was 6.75%, which was in effect when the January 13, 2020 judgment was entered by the Trial Court awarding damages to Plaintiff. *See Tennessee Judgment Interest Rates*, TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, https://www.tncourts.gov/node/1232344 (last visited Apr. 6, 2022). The statutory interest rate was subsequently modified to 5.25% in July 2020. *Id.* In its order, the Trial Court awarded post-judgment interest to Plaintiff at the rate of 6.75% from the time the judgment was entered on January 13, 2020 through April 26, 2021, the date the Trial Court's order setting post-judgment interest was entered. The Trial Court held that the interest rate would remain the same as when the judgment was entered and would not be modified each time the statutory interest rate changed. Neither party argues that the Tennessee Administrative Office of the Courts has improperly calculated the interest rates. Defendant argues only that the Trial Court's use of only one interest rate in calculating post-judgment interest for the entire post-judgment period was

- 5 -

error. According to Defendant, the Trial Court should have used two different interest rates in its calculation of post-judgment interest because the rate on the website of the Tennessee Administrative Office of the Courts changed in July 2020 after entry of the judgment.

In his brief, Defendant cites to *Cardle v. Cardle*, No. M2016-00862-COA-R3-CV, 2017 WL 2188534 (Tenn. Ct. App. May 17, 2017), as "discussing the fluctuating interest rate." In *Cardle*, this Court discussed the change in law when Tennessee Code Annotated § 47-14-121 was amended in 2012 from a set rate of 10% per annum post-judgment interest to an "interest rate on judgments [that] fluctuates and is now calculated" pursuant to the new terms in section 47-14-121(a). *Id.* at *8-9; *see also* Tenn. Pub. Acts, Ch. 1043, § 1 (H.B. 2982). However, this Court's opinion in *Cardle* does not support the argument that a trial court is required to utilize multiple interest rates to calculate interest on a judgment when the rate has fluctuated after the judgment was entered. In fact, this Court in *Cardle* determined that the case should be remanded for the trial court to calculate post-judgment interest at 5.50% per annum, which was the interest rate in effect when the judgment was entered, despite a subsequent change in the rate after the judgment was entered. *See Cardle*, 2017 WL 2188534, at *9; *Tennessee Judgment Interest Rates*, TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, https://www.tncourts.gov/node/1232344 (last visited Apr. 6, 2022).

Upon our analysis of Tennessee Code Annotated § 47-14-121, we determine that the statute is clear and unambiguous. Because the statute is clear and unambiguous, it is not necessary to look outside the text of the statute enacted by the General Assembly. Pursuant to subsection (a), the relevant interest rate per annum to be applied to a judgment is determined based on the timeframe within which the trial court's judgment awarding damages is entered. For judgments entered between January 1 and June 30, as is the case here, the statute directs that the applicable interest rate to be applied is two percent less than the formula rate published in December of the prior year. Subsection (b) is separate from subsection (a) and does not result in subsection (a) being ambiguous. Subsection (b) simply directs the Tennessee Administrative Office of the Courts to calculate and publish the applicable interest rate for each six-month period in order to assist litigants and courts in determining and applying the proper interest rate. Nowhere in Tennessee Code Annotated § 47-14-121(a) or (b) does the statute instruct courts to apply multiple interest rates to a judgment or to modify the applicable interest rate over each six-month time period.

Although Defendant argues that the post-judgment interest rate should be modified for each six-month period that the judgment was owed, this is not how the General Assembly has chosen to calculate post-judgment interest rates. We hold that Tennessee Code Annotated § 47-14-121(a) requires a trial court to calculate post-judgment interest using only the statutory interest rate in effect when the judgment is entered. The applicable post-judgment interest rate does not fluctuate when applied to a particular judgment; instead, it remains the same for the entire period of time following entry of the judgment

awarding damages until the judgment amount is paid. Based upon our holding, we affirm the Trial Court's judgment applying the 6.75% interest rate in calculating post-judgment interest during the entire time period following entry of the judgment awarding damages.

Plaintiff raises an additional issue in her brief, arguing that Defendant's appeal was frivolous and that she should be awarded attorney's fees and costs. Tennessee Code Annotated § 27-1-122 provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A successful party should not be forced to bear the costs and vexation of a baseless appeal, nor should appellate courts be saddled with such appeals. *See Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). However, the courts must take care not to discourage legitimate appeals and should only impose a penalty pursuant to Tennessee Code Annotated § 27-1-122 in rare and obvious cases of frivolity. *Id.* Whether to award damages due to a frivolous appeal is a discretionary decision by the appellate court. *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003). Although Defendant has not been successful in his appeal, we do not find this appeal so utterly devoid of merit as to justify deeming the appeal frivolous. Based upon the foregoing, and in the exercise of our discretion, we deny Plaintiff's request for attorney's fees on appeal.

## Conclusion

Based on the foregoing, the Trial Court's judgment is affirmed in all respects. We remand to the Trial Court for collection of the costs assessed below. Costs on appeal are assessed to the appellant, David L. Coffey, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE